The next matter is American Auto v. Tyrone Murray et al. My name is Beth Culp and I'm here for American Automobile Insurance Company. Are you going to ask me about standing as well? Yeah. I noticed you weren't on the briefs, but... I was not. The gentleman who was is no longer with our firm. He's actually retired from the practice, so... Well, wishing the best. Yes. The point here is that you brought a suit against, among others, Easter and Eni. Yes. You have standing, right? Absolutely. Why don't they have standing? Why don't Easter and Eni have standing? With respect to you. We believe Eni does have standing. Okay. And I apologize. We flip-flopped on that issue because we read Treetop and then thought, well, I guess under this analysis... Or Treesdale, you mean. Treesdale. I'm sorry. Treesdale. Treesdale, right. And Mountaintop. Yes, right, right. In any event, I think perhaps if I talk to the court about the thought process we go through, because I think it mirrors the constitutional standard of standing. All I do is represent insurance companies. I file a lot of declaratory judgment actions. When we make the determination as to whether or not we are going to name injured parties, one of the things we do look at is, does our insured, Murray, does it look as if Murray would have the assets to satisfy a judgment if he lost on the claim that was brought against him? So it's an immediate injury. And the reason we look at that is we go, if we bring our declaratory judgment actions and we frequently invoke the jurisdiction of the federal courts to avoid, you know, we're the insurance company. We frequently like to avoid state courts. So we look at that and we say, if we're going to be looking down the barrel of a garnishment action three years from now or a consent judgment with an assignment, what we need to do is get everybody who has what we view as a right under that policy, to the proceeds under that policy, to be bound, so that we don't run the risk of an inconsistent judgment. And I think that's where the Supreme Court was in the Maryland casualty case. They said there's a risk of an inconsistent judgment. But also we view, and I think you need to view, the ennies of this world, the clients of our insureds, as if not intentional third-party beneficiaries, at least from a realistic and actual perspective, they are third-party beneficiaries of our insurance policy to the extent they do prevail against our client. And just so it's clear, too, it's not atypical. What's happened here is the two underlying actions have been stayed. Nobody's investing a lot of time or effort in litigating those two cases. And that's not unusual either. Frequently we are, you know, not only the only deep pocket, frequently we're the only pocket. So that's how we view the standing issue. And under that analysis... So how do you distinguish between then Easter and Ennie then? Easter's not a third-party beneficiary of our contract. Easter would not, if she gets a judgment against Ennie, she does not get to bring an action to garnish our policy. Now she may have an assignment and ultimately have an interest in our policy, but she won't be able, just as we stand here today, as things are today, we cannot foresee or predict with any certainty that she will be able to bring a garnishment action. So which case should we be looking to to make our analysis? I think Rauscher. I think it's most on point. I think it's most likely to lead to a fair and equitable result. And avoid, you know, multiple actions. And ensure that it's fair. I mean, I think if you look at the situation here even, and this isn't unusual either, Your Honor, Murray's didn't appeal. He's got other folks carrying the water for him. But that's not unusual for our insurer to say, I'll file for bankruptcy. You know, I've got no assets. I'll file for bankruptcy. So I do think that as a matter of fairness, the Rauscher approach makes sense. Now if I may. It's kind of a flip from what you anticipate seeing where the insurance company is arguing to bring plaintiffs into the courtroom, or defendants into the courtroom. Or at least one of them. At least one of them. Because I think we have to look at the realities of the situation. The realities of the situation are frequently we are the stakeholder. And it's better for us, for the industry. It's not altruistic necessarily. It's better for us to have issues resolved ahead of time and declaratory. Absolutely. Rather than being confronted with a, you know, $4 million judgment. And a demand within policy limits. And that parade of horribles that we frequently encounter. Anything else on standing? I'm just wondering if the, we're talking about summary judgment. And maybe the district court was absolutely right in the way it constituted the retroactive date in terms of this policy. But why isn't it a jury question? Why doesn't it go to the reasonable intent of the parties? What the parties intended when this party thing was entered into. If it's ambiguous, it would go to the reasonable expectations of the insured. Why is it a summary judgment case? Well, I think first of all, I do think that the court applied principles of construction. Established principles of construction. And that's his job or her job. It's the court's job to interpret contracts. And I don't think that you get to the whole issue of ambiguity and intent. And a jury question as to that provision. Unless you first find that there's another reasonable reading of that provision. And there is no other reasonable reading of that provision. And I think that's where the court was. Mr. Martin gave us another reading. He did give another reading, but I don't think it's reasonable. There is absolutely, you can't get away. He made it sound pretty good. Maybe he sucked me into it. I don't know. Well, I'd be happy to talk about that construction. I believe that, first of all, you can uphold the court on it. You don't have to agree with them on that particular issue. There are other bases, and I think they're in the record in this opinion. You don't even have to get to the interpretation of that provision. And I think that if you look at what the appellants are arguing now, they're saying, we don't care what the retroactive date is. We still win because there was this meeting, supposedly, that happened in January or February of 2006 about insurance coverage. And I would urge the court, if it's tempted to be led down that path, to actually look at the testimony. Well, what's your recounting? We will do that. Your recounting of the meeting, how does it differ from what your colleague said? Murray, first of all, testified that he didn't know when it occurred. He couldn't even say that the meeting occurred before March of 2006, which was when the accident was. That might make sense that when there's an automobile accident and one of your customers is involved, you might want to go and talk about your coverage. So there's that issue. But our view of that is, and it was what Judge Ambrose was touching on earlier, is that, first of all, we have to talk about what claim is at issue under our policy. And it's not true that our policy covers a claim as determined by when damages occur. The term claim in our policy is a defined term, and it means either a demand for compensatory damages because of negligence in performing professional services, or, and this is important, a suit. So the wrongful acts that you look at, you go to the allegations in the lawsuit that Enni brought against our insured Murray. And if you look at the allegations of that suit, it very specifically and clearly says that beginning in 2000, Mr. Murray failed to properly evaluate the liquor liability exposure of Enni and renewed the same or similar, I think the phrase is, identical coverage year after year after year. The claim that's at issue here and the wrongful acts that it's based on, based only on the four corners of that complaint. If you look at the four corners of that complaint and you ask yourself, did this failure to advise occur wholly after January of 2006? Or even you can ask the same question. Did it occur wholly after November 24, 2004, which is their position earlier, that you look at that as the retro date? You cannot identify any act of negligence, not even the purported negligence that happened in January, February of 2006, that is distinct from the negligence that happened in 2000 and 2002. And that is, you failed to ask me about my business and whether I sold liquor to the public. You failed to advise me that I needed liquor liability coverage. There isn't any specific allegation. Nothing new, different, or distinct in what happened supposedly in 2006. Well, you know, their argument, of course, is there might have been negligence, but it didn't sort of manifest itself. There was no injury or damage until much later. How do you respond to that? That's an irrelevant concept under our contract. And the cases that they cite, they're all occurrence-based policies where the trigger is the occurrence of bodily injury or property damage or the commission of a personal injury offense during the policy period. That's not our coverage. Our coverage is triggered by a negligent act, error, or omission in the providing of professional services. And that's also a defined term in our policy. Professional services is specifically defined as a placement of a policy, the giving of advice about a policy. So the trigger is negligent act, error, or omission in the performance of a professional service after the retroactive date. And in addition, it has to – You're focusing on wholly after, and you're saying – Wholly after. This argument is wholly out of the equation. Wholly. Absolutely. They're taking a very freeze-frame approach. First of all, they're sort of confusing occurrence policies from a claims-made policy. But then they're saying it's almost like a last-clear-chance analysis. And that's the only negligence that you look at. But that's not what our policy says. Our policy says the wrongful act has to occur wholly after the retroactive date. Let's just say, for example, I think to put it in perspective, let's just say that on – pick a date. March 2, 2004. Okay. Or no, we'll use their retroactive date. We'll say that in 2004, say December, after what they say is the retroactive date, Mr. Murray hands a paper to Eni and says, you know, I've been looking at your coverage. It's going to be renewed. I really think you need to have liquor liability coverage. And Eni says, no, it's too expensive. Don't want to have liquor liability coverage. If that had happened, even though that professional service happened, you know, after the policy or after the retroactive date, we wouldn't have any liability for an accident that happened two years later. Right? Because we'd have an absolute defense at that point in time. The issue is we don't want to pick up. Well, aren't you now confusing occurrence policies with claims-made policies? No, no. I'm saying that – I think that's the distinction. I'm saying that it's the act or what happens without regard to when the injury happens. Just as we could be found responsible, we under our policy could be found responsible for an act that's remote from the injury, our injury could also be vindicated on the same basis. It's not – the trigger is when the negligent act occurs. And here they absolutely did not, cannot, based on the allegations in the complaint that was made, the operative complaint here, the only one that counts is the one Eni versus Murray. If you look at the allegations of that complaint, every single allegation of that complaint dates back to at least 2002. I don't have anything else unless you have something for me. You've had a long morning. And we're not done. Thank you very much. Thank you. A couple of things I'd like to respond to. Well, maybe we can start by zeroing in on your – at least the way I interpret your argument about the operation of this policy. It does seem like it reads the word wholly out of the phrase wholly after. I don't think so, Your Honor. And perhaps wholly could mean you could – it's only for negligence that didn't occur before – you couldn't have been negligent before the retroactive date. That's what their interpretation is, that if there was any negligence that occurred before the retroactive date, they don't have to provide coverage. Maybe wholly could mean that. But it could also mean the claim that is made against you arises wholly out of events that occurred after the retroactive date. And that's what we're arguing. Because the liability of Murray to Ennie arises out of his failure to provide adequate insurance in place on March 24, 2006. And if I can, I want to read a paragraph from the complaint that counsel referenced that Ennie filed against Murray. And in paragraph 7 it says, defendant Murray caused the same or similar policy to be renewed with identical coverages on the annual anniversary date of said policy up to including March 24, 2006. What paragraph is that? This is in the appendix at page 55. It's paragraph 7 of the complaint filed by Ennie against Murray, which is the complaint for which Ennie is seeking coverage under this policy. The other point that counsel raised about what if Murray had advised Mr. Pong that he should get Dram Shop coverage and Pong said, no, it's too expensive. Well, what happens is Murray wins his lawsuit. Ennie loses his lawsuit. But that doesn't relieve the insurance company of the obligation to provide Mr. Ennie with a defense in that lawsuit. And if he is found liable, to indemnify him for that lawsuit. And that's what the parties are seeking in this case, is to have an opportunity to proceed with the claim of Ennie versus Murray and to have the insurance company defend and indemnify that claim. And I think the language of the policy certainly can be reasonably interpreted to require the insurance company to provide that defense and indemnity. How do you respond to the argument that, okay, that's fine for Ennie, but with respect to Easter, back to the initial issue we talked about standing, Easter doesn't have a dog in the fight because if Easter were to win, Easter has no right to have a garnishment against the insurance company. Well, if Easter gets a claim against, gets a judgment against Murray, Murray could very well assign his rights to his claim against Ennie to Easter, and then Easter would stand in the shoes of Ennie and have the same standing. So at that point you would have standing, but prior to that happening. Well, I think that the point of the broad standing is to allow parties who may have a direct claim at some point in time to participate in the declaratory judgment action, which determines whether or not there's any coverage. When you put direct into that, you may have put them in the hat. I'm not sure how direct that would be.  Your Honor, if we obtained, as counsel said, a consent judgment with an assignment of rights, it would be a direct interest in the policy. And that's why the insurance company frankly named everybody, because they're concerned about that event. And that's why everybody here wants this Court to reach the merits. But your answer is, if it's not that, if the case is on standing, I'll say it must be an immediate impact that is not hypothetical. It must be a certain injury. And it's not hypothetical, your Honor. This impact is real. If there's no coverage, Easter has no pot to go after. But to get there you have to speculate. I don't think it's speculative. Easter has to win in his suit and then against Ennie. Ennie has to win in his suit against Murray. That's twice removed, right? It's a two-step process, yes. But as I said earlier, you know, the important thing from everybody's perspective is that this panel reach the merits of the argument. And I think that whether it's based on Ennie's appeal or Easter's appeal. We can do this all day, Murray. You can speak and I can speak and we'll never know. I'm sorry, your Honor. I'm having difficulty hearing. Well, that's because you're speaking when I'm speaking. Jurisprudentially, if we can't reach the merits, I mean, it may not benefit either of you folks, but jurisprudentially, if there's no standing, we just cannot get to the merits. That's correct, your Honor. But Judge Ambrose was asking me specifically about the Easter's standing. And I was responding that regardless of the Easter's standing, I think it's clear that Ennie has standing. You don't have to have that two-step removed process. And if Ennie has standing and the court reaches the merits of the claim, then the parties are satisfied. When does the garnishment normally come into play here? How does it work? It works in many different ways. I understand. You could have a judgment and then you could confess judgment or, I'm sorry, allow a judgment and then assign it. But how would a garnishment work here? Quite frankly, your Honor, I'm not completely comfortable with my understanding of Pennsylvania garnishment law. I know it has changed. There was a point in time when a judgment creditor had a right to bring a garnishment action against the insured, naming the insurance company as an asset of the insured and go through that type of garnishment proceeding. My recollection, and I'm rusty on this, is that that changed, and at some point the Pennsylvania courts allowed a direct claim from the judgment debtor against the insurance company. But either way, there is a way to go against the proceeds of the policy. Maybe I can ask Ms. Culp that question. Because normally I understand a garnishment obviously in the classic way, which is a garnishment of someone's wages, for example, for not paying child support. But how does the garnishment work in this context? My understanding is that it is identified as an asset of the individual, and it can be executed against directly. And we would have to bring our coverage. If we had defenses to the third-party beneficiary of the contract, we'd have to have those heard in the garnishment proceeding. Okay. Thank you. Mr. Martin, you have no idea, at least for me, how refreshing it is to have a lawyer say they're not totally comfortable with his or her understanding of the law. We frequently get the idea that a lawyer should not be as comfortable as they apparently are with their understanding of the law. But it really is, and I don't mean it derogatory, I mean it really as a compliment, that I don't know is a wonderful answer, and it's appreciated. Thank you, Your Honor. I appreciate that. I see my red light is on. Thank you. That's a very helpful argument. And could we get a transcript? We can see Ms. Skowarski afterward, and she'll go through the mechanics of how that's done. It would be helpful to us if we could order a transcript. And again, Ms. Culp and Mr. Martin, thank you very much for your argument and helping us out with this case. Thank you.